**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DONGGUAN FANGDE NETWORK
TECHOLOGY CO., LTD.,

        Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE A,

        Defendants.

Civil Action No. 25-cv-09434

## COMPLAINT

Plaintiff Dongguan Fangde Network Technology Co., Ltd., ("Plaintiff"), by and through its undersigned counsel, hereby files this Complaint against The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A hereto (collectively, "Defendants") and alleges as follows:

## NATURE OF THE ACTION

1.  Defendants, through online commerce platforms including without limitation Shein.com and Temu.com (collectively, the "Seller IDs"), have infringed, and continue to infringe, on Plaintiff's United States Patent ▮▮▮▮▮▮▮▮ (the "Asserted Patent"), specifically the single claim of this design patent, by manufacturing, distributing, importing, offering for sale, and/or selling products encapsulating the patented design in violation of 35 U.S.C. § 271 (the "Infringing Products").

1

2.     Plaintiff must take immediate action to halt Defendants' ongoing and willful infringement of their patent, and to protect unsuspecting consumers from purchasing potentially dangerous and inferior Infringing Products over the Internet. Plaintiff has been and continues to be irreparably harmed by Defendants' infringement of Plaintiff's Asserted Patent and, therefore, Plaintiff seeks injunctive relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for the injury it has sustained and is sustaining.

3.     Plaintiff Dongguan Fangde Network Technology Co., Ltd. Is a company formed under the laws of the People's Republic of China engaged in the business of developing products for sale utilizing Internet-based e-commerce websites. These websites sell Plaintiff's products in the United States of America and abroad.

4.     Plaintiff applied for the Asserted Patent with the United States Patent and Trademark Office and was granted the Asserted Patent, ███████████████████████

███

5.     █████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████

6.     A copy of the Asserted Patent is attached as **Exhibit 1** and will be filed under seal with the Court's permission.

7.     Plaintiff is the owners of all right, title and interest in the Asserted Patent, and has standing to sue for infringement of the Asserted Patent.

8.      After obtaining the registration for the Asserted Patent, Plaintiff conducted an internet inquiry and discovered that the Defendants were selling products that embodied the Asserted Patent, despite having no license or authorization from Plaintiff.

9.      Defendants' Infringing Products are of demonstrably inferior quality and durability compared to Plaintiff's genuine products, which were rigorously tested and quality-controlled, posing potential safety risks to consumers. The Infringing Products threaten to destroy Plaintiff's reputation and goodwill and cause significant harm to Plaintiff's business, for which there is no adequate remedy because sale of products embodying the Asserted Patent is the core of Plaintiff's business.

10.     On information and belief, Defendants' infringing activities of offering for sale and selling Infringing Products arise from the same transaction, occurrence, or series of transactions.

11.     Specifically, on information and belief, Defendants are actively participating in a conspiracy to manufacture, arrange the manufacture of and/or sell and otherwise distribute the Infringing Products as part of a coordinated scheme to profit from patent infringement. Moreover, the Infringing Products and their corresponding listings share similar characteristics suggestive of common ownership or scheme.

12.     Plaintiff therefore bring this action for federal patent infringement pursuant to 35 U.S.C. § 271, et seq.

## JURISDICTION AND VENUE

13.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Patent Act, 35 U.S.C. § 101 *et seq.*, and 28 U.S.C. §§ 1338(a), 1331.

3

**Personal Jurisdiction**

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive commercial Internet stores operating under the online marketplace accounts identified in Schedule A attached hereto (collectively, the "Seller IDs").

15.     Specifically, Defendants have targeted sales to Illinois residents by setting up and operating one or more commercial, e-commerce stores through which Illinois residents can purchase products bearing counterfeit versions of Plaintiff's federally registered patents. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products bearing counterfeit versions of Plaintiff's federally registered  to the United States including to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

16.     Alternatively, Federal Rule of Civil Procedure 4(k) confers personal jurisdiction over the Defendants because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in Illinois and in this judicial district, and/or derive substantial revenue from their business transactions in Illinois and in this judicial district and/or otherwise avail themselves of the privileges and protections of the laws of the state of Illinois such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal infringing actions caused injury to Plaintiff in Illinois and in this judicial district such that Defendants should reasonably expect such actions to have consequences in Illinois and in this judicial district.

4

17.     Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including Illinois, through on-line platforms and storefronts, via on-line marketplace websites such as Amazon.com, eBay.com, Temu.com, Wish.com, Walmart.com, and others (the "Third-Party Platforms"), under the Seller IDs, as well as any and all as yet undiscovered accounts with online storefronts held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, through which consumers in the United States, including Illinois, can view the one or more of Defendants' online storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Infringing Products and to place orders for, receive invoices for and purchase Infringing Products for delivery in the U.S., including Illinois, as a means for establishing regular business with the U.S., including Illinois.

18.     Upon information and belief, Defendants are sophisticated sellers, operating one or more commercial businesses using their respective storefronts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert of participation with any of them, operate storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Infringing Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them in wholesale quantities at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically Illinois.

19.     Upon information and belief, all Defendants accept payment in U.S. Dollars, collect and pay Illinois sales tax, and offer shipping to the U.S., including to Illinois.

20.     Defendants have transacted business with consumers located in the U.S., including Illinois, for the sale and shipment of the Infringing Products.

21.     Plaintiff also markets and offers for sale its genuine products to consumers in the U.S., including Illinois through authorized distributors and third parties via the Internet. **Exhibit 2** hereto are true and correct images of Plaintiff's genuine products on its online storefront. Exhibit 2 will be filed under seal with the Court's permission.

22.     Upon information and belief, Defendants are deliberately employing and benefiting from coordinated paid advertising and marketing strategies in order to make their storefronts selling illegal goods appear more relevant and attractive to search result software across an array of queries.

23.     By their actions, Defendants are causing concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff of its right to fairly compete for space within the various on-line marketplace search results and reducing the visibility of genuine Plaintiff's products on various on-line marketplaces and/or diluting and driving down the retail market price for the (ii) causing an overall degradation of the value of the goodwill associated with Plaintiff's works and goods; and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about its brand and products.

24.     Defendants are concurrently targeting their infringing activities toward consumers and causing harm in Illinois.

25.     Upon information and belief, many Defendants reside and/or operate in and/or purchase the illegal goods from foreign jurisdictions with lax or nonexistent intellectual property enforcement systems.

26.     Upon information and belief, Defendants are aware of Plaintiff's products and are aware that their illegal infringing actions alleged herein are likely to cause injury to Plaintiff in the United States, in Illinois and in this judicial district specifically, as Plaintiff conducts substantial business in Illinois.

**Venue**

27.     Venue is proper in this Court under 28 U.S.C. § 1400(b), the specific venue statute for patent infringement actions which states that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement."

28.     Additionally, venue is proper under 28 U.S.C. § 1391(b)(2) which authorizes civil action to be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

10.     Defendants offer for sale products infringing upon Plaintiff's Asserted Patent to consumers in this forum. Screenshot evidence showing each Seller ID on Schedule A selling Infringing Products is **Exhibit 3** hereto and will be filed under seal with the Court's permission.

29.     Select screenshots of Plaintiff's evidence demonstrates that Defendants were and are offering for sale and/or selling Infringing Products to the United States, including Illinois, is included in the table below:





30.     Each Defendants' offering of Infringing Products for sale within this forum is a substantial part of Plaintiff's claims and establishes a proper venue in this district.

31.     Venue in this district is further justified by 28 U.S.C. § 1391(b)(3) and 28 U.S.C. § 1391(c)(3). Section 1391(b)(3) states "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action" is an appropriate venue.

32.     In addition to being subject to personal jurisdiction before this Court arising from their tortious acts within the forum, Defendants are foreign companies who do not reside in any other United States judicial district, as provided for in Section 1391(b)(1); meaning that if the Court rejects Plaintiff's claims of substantiality, venue is not otherwise provided for under Section 1391(b) and is appropriate here as this Court has personal jurisdiction over Defendants.

33.     Accordingly, venue is proper before this Court either because a substantial part of events giving rise to Plaintiff's claims occurred in the district, or else because Defendants do not reside in any State and are subject to this Court's exercise of personal jurisdiction, or else because Defendants are nonresidents of the United States.

34.     For the reasons stated above, venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants.

## THE PARTIES

**Plaintiff Dongguan Fangde Network Technology Co., Ltd.**

11.     Plaintiff is a company organized under the laws of the People's Republic of China. Plaintiff has licensed the Asserted Patent to various businesses which are engaged in the sale of various products through the use of authorized distributors and Internet-based e-commerce stores.

12.     Plaintiff runs a successful business selling, among other items, products using the Asserted Patent. Plaintiff's business conducts substantial commercial operations including sales and advertising of its patented products. Plaintiff is the owner of all rights, title, and interest in the Asserted Patent which have been registered in the United States.

13.     Among the exclusive rights granted to the Plaintiff under the Patent Act are the exclusive rights to manufacture, distribute, import, offer for sale, and/or sell goods encapsulated by Plaintiff's Asserted Patent.

10

14.     Plaintiff's products are known for their distinctive patented designs. These designs are broadly recognized by consumers, are highly sought after, and are associated with the quality and innovation that the public has come to expect from Plaintiff's products.

15.     Plaintiff uses these designs in connection with its products, including, but not limited to, the designs shown in the below table and in Exhibit 1. Plaintiff's products, including those which embody the Plaintiff's Asserted Patent, are marked in compliance with 35 U.S.C. § 287(a).







16.     Plaintiff has spent substantial time and money advertising its goods and plans to continue expanding its advertising and promotion of genuine goods embodying the Asserted Patent by authorized distributors and third parties via the Internet.

17.     Over the past several years, visibility on the Internet, particularly via e-commerce platforms such as Amazon, eBay, TikTok, Temu, Shein, Wish, Walmart, and others, ("Third-Party Platforms"), has become increasingly important to Plaintiff's overall marketing. Thus, Plaintiff and its authorized distributors will be expending significant monetary resources on Internet

marketing, including search engine optimization ("SEO") strategies. Those strategies allow Plaintiff and its authorized retailers to educate consumers fairly and legitimately about the value associated with genuine Plaintiff's products.

18.     Similarly, Defendants' individual Seller IDs are indexed on the Third-Party Platforms and compete directly with Plaintiff for space in the search results, resulting in a flooding of the market with Infringing Products and irreparably harming the Plaintiff and its business.

**<u>The Defendants</u>**

19.     Defendants are individuals and business entities who, upon information and belief, reside and/or operate the Seller IDs in the People's Republic of China and other foreign jurisdictions or redistribute products from the same or similar sources in those locations.

20.     Defendants appear to be an interrelated group of infringers, who create the Seller IDs on various third-party online platforms and design these stores to appear to sell genuine versions of Plaintiff's products, while they actually sell inferior infringing imitations of Plaintiff's products.

21.     The Seller IDs share unique identifiers establishing a logical relationship between them and reflecting that Defendants' illegal operation arises out of the same transaction, occurrence, or series of transactions or occurrences.

22.     The Seller IDs share unique identifiers, such as common design elements, the same or similar Infringing Products they offer for sale, product descriptions, shopping cart platforms, and accepted payment methods. They also use the same or similar check-out methods, absent or fake contact information, identically priced or similarly priced Infringing Products and volume sales discounts. These numerous similarities establish a logical relationship between Defendants and show the likelihood that their illegal operations arise out of the same transaction or occurrence.

23.     Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their sophisticated infringing operation, including changing the names of their stores multiple times, opening new stores, helping their friends open stores, and making subtle changes to their products and listings.

24.     These tactics used by Defendants to conceal their identities, and the full scope of their illegal operation, make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their illegal network. Should Defendants provide additional credible information regarding their identities, which they are required to present as part of their defense, Plaintiff will amend the Amended Complaint accordingly.

## **DEFENDANTS' UNLAWFUL CONDUCT**

25.     The success of online sales of products to the United States has resulted in significant infringement of Plaintiff's Asserted Patent. Consequently, Plaintiff regularly investigate suspicious e-commerce stores identified in proactive Internet sweeps.

26.     Plaintiff has identified hundreds of fully interactive e-commerce stores, including the Seller IDs, offering for sale and/or selling Infringing Products to consumers in this Judicial District and throughout the United States. ████████████████████████████████████████████████████████████████████████████████████████████████████

27.     Based on Plaintiff's investigation, Defendants have sold countless varying types of these Infringing Products, with an unknown total retail value. The Infringing Products have been distributed to customers across the U.S., severely impacting the market for Plaintiff's genuine products.

28.     Defendants operate at least the Seller IDs identified in Schedule A and engage in the unauthorized reproduction, public display, and distribution of goods embodying Plaintiff's Asserted Patent and/or substantially similar thereto.

29.     Defendants' sale, distribution, and advertising of Infringing Products are highly likely to cause consumers to believe that Defendants are offering and selling authorized products when in fact they are not.

30.     Images of the Seller IDs' Infringing Products demonstrate a verbatim reproduction of the specific patented design elements contained in the Asserted Patent causing consumer confusion and market harm.

31.     To illustrate, below are several examples using several of the Seller IDs included in Schedule A attached hereto which show that the Infringing Products embody Plaintiff's Asserted Patent:





32.    Defendants' unauthorized manufacture, distribution, importation, offering for sale, and/or sale of products embodying Plaintiff's Asserted Patent is irreparably harming Plaintiff and its business.

33.    According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price ("MSRP") of goods seized by the U.S. government in fiscal year 2023 was over $2.7 billion. (*See* **Exhibit 4** at 2). Internet websites like the Seller IDs are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. (*See* **Exhibit 5** at 8).

34.    E-commerce retail platforms such as those used by Defendants do not subject new sellers to verification and confirmation of their addresses and identities, thus allowing infringers to extensively use false names and addresses when registering with these e-commerce retail platforms and open multiple Seller IDs in attempts to avoid detection.

35.    As stated above, Defendants employ and benefit from substantially similar advertising and marketing strategies. Defendants facilitate sales by designing Seller IDs so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers.

36.    Online internet stores like the Seller IDs appear sophisticated and accept payment in U.S. dollars via credit cards, Amazon Pay, Western Union, PayPal, and other reputable payment platforms. Online internet stores like the Seller IDs often include content and images that make it exceedingly difficult for consumers to distinguish such stores from an authorized retailer.

37. Plaintiff has not licensed or authorized any of the Defendants to manufacture, distribute, import, offer for sale, and/or sell goods embodying Plaintiff's Asserted Patent, and none of the Defendants are authorized to sell Plaintiff's products.

38. Upon information and belief, Defendants have engaged in fraudulent conduct when registering the Seller IDs by providing false, misleading, and/or incomplete information to e-commerce platforms.

39. Upon information and belief, certain Defendants have anonymously registered and maintained aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

40. Upon information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Infringing Products on e-commerce platforms such as Shein, Temu, and other Third-Party Platforms. Such seller alias registration patterns are one of many common tactics used by Defendants to conceal their identities and the full scope and interworking of their illegal operation, and to avoid being shut down.

## **JOINDER OF DEFENDANTS**

41. Defendants appear to be an interrelated group of infringers, who create numerous Seller IDs and design these stores to appear to be selling genuine versions of Plaintiff's products, while they are actually selling inferior, unauthorized imitations of Plaintiff's products.

42. The Seller IDs share unique identifiers, such as the following: common design elements, the same or similar infringing products that they offer for sale, similar infringing product descriptions, the same or substantially similar shopping cart platforms, the same accepted payment methods, the same check-out methods, the same dearth of contact information, and identically or similarly priced infringing products and volume sales discounts. The foregoing similarities

establish a logical relationship between them and suggest that Defendants' illegal operations arise out of the same series of transactions or occurrences.

43.    The Infringing Products offered for sale by unauthorized retailers such as the Seller IDs often bear irregularities and indicia of being unauthorized that are similar to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that these unauthorized retailers are interrelated.

44.    On information and belief, groups of infringers such as Defendants here are typically in communication with each other. They regularly participate in WeChat chat rooms, and communicate through websites such as sellerdefense.cn and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and new lawsuits. *See* **Exhibit 6**. Infringers such as Defendants commonly operate under multiple seller aliases and payment accounts so that they can continue operation despite enforcement efforts.

45.    Analysis of financial account transaction logs from previous similar cases indicates that offshore infringers regularly move funds from U.S.-based financial accounts to offshore accounts outside the jurisdiction of the U.S. and this Court. Further analysis of similar cases shows that defendants often sweep their accounts in case their infringing activities are detected, and their accounts are frozen, at which time defendants may settle for small amounts to regain access to the remaining funds or abandon their stores altogether and start fresh with a new alias.

46.    Here, on information and belief, Defendants maintain offshore bank accounts and regularly move funds from their financial accounts that are associated with the activity complained of herein to such offshore accounts based outside of the jurisdiction of this Court. On information and belief, Defendants undertake such activity in an attempt to avoid payment of any monetary judgment awarded based on their infringement of intellectual property rights.

47.     These tactics used by Defendants to conceal their identities and the full scope of their infringing operations make it almost impossible for Plaintiff to learn the precise scope and the exact interworking of their illegal network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## COUNT I
## PATENT INFRINGEMENT OF U.S. PATENT ▮▮▮▮▮▮▮

48.     Plaintiff hereby re-alleges and incorporates by reference each of the allegations set forth in the preceding paragraphs.

49.     Defendants make, use, sell, offer for sale, and/or import into the United States products that infringe Plaintiff's Asserted Patent.

50.     Defendants' Infringing Products and the invention claimed in Plaintiff's Asserted Patent are substantially the same. Said sameness deceives prospective purchasers and induces them to purchase Defendants' products supposing them to have come from Plaintiff.

51.     Defendants' Infringing Products misappropriate the novelty of the invention by directly copying the patented design's unique structural mechanism that distinguished Plaintiff's patented invention from the prior art.

52.     Defendants sell, offer for sale, and/or import into the United States for subsequent sale or use products that infringe directly and/or indirectly the novel invention claimed in the Asserted Patent.

53.     No licensing agreements exist between Plaintiff and Defendants regarding the Asserted Patent. Defendants have infringed the Asserted Patent through the acts complained of herein and will continue to do so unless enjoined by this Court.

21

54.     Defendants have had actual and constructive notice of Plaintiff's rights in the Asserted Patent because the Asserted Patent is clearly marked on products embodying the patented design and marked on the packaging with the patent number in accordance with 35 U.S.C. § 287. Plaintiff also lists the patent number associated with each of its products on its online storefront at █████████████

55.     Defendants' infringement of the Asserted Patent has been willful and deliberate, as evidenced by their continued sale of infringing products despite actual knowledge of Plaintiff's patent rights, their deliberate copying of the patented design's distinctive features, and their attempts to conceal their infringing activities through multiple seller aliases.

56.     Defendants' infringement of Asserted Patent has caused Plaintiff to suffer irreparable harm resulting from the loss of their lawful rights under U.S. patent law to exclude others from making, using, selling, offering for sale, and importing the designs claimed in the Asserted Patent.

57.     This infringement has directly impacted Plaintiff's revenue and sales, causing a significant decrease in market share and substantial financial losses.

58.     Furthermore, the influx of Infringing Products has led to price erosion in the market, forcing Plaintiff to lower their prices to remain competitive, thereby reducing their profit margins and overall revenue.

59.     Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

---

█ ████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████

60.     Plaintiff is entitled to recover damages adequate to compensate Plaintiff for Defendants' infringement of the Asserted Patent, including Defendants' profits pursuant to 35 U.S.C. § 289.

61.     Plaintiff is entitled to recover any other damages as appropriate pursuant to 35 U.S.C. § 284, including enhanced damages up to three times the amount found or assessed, due to Defendants' willful infringement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and entry of an Order directing as follows:

(1)     Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert or participation with them be permanently enjoined and restrained from the following activities, as Plaintiff will demonstrate (1) that they have suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the Plaintiff and defendants, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction:

(a)     making, using, importing, offering for sale, and selling any product not authorized by Plaintiff that includes any reproduction, copy, or colorable imitation of the invention claimed in the Asserted Patent, or inducing others to do the same;

(b)     effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth herein; and

      (c)     aiding abetting, contributing to, or otherwise assisting anyone in infringing the Asserted Patent.

(2)     Directing that Defendants deliver for destruction all products not authorized by Plaintiff that include any products embodying a reproduction, copy, or colorable imitation of Plaintiff's Asserted Patent.

(3)     Entering an Order that all banks, savings and loan associations, other financial institutions, payment processors, on-line marketplaces, and other third-parties who are in active concert or participation with Defendants, shall, within two (2) business days of receipt of an Order entered by this Court:

      (a)     Locate all accounts connected to Defendants;

      (b)     Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

      (c)     Transfer to Plaintiff all funds restrained in such accounts up to the amount of any monetary relief awarded to Plaintiff by this Court within ten (10) business days of receipt of such Order.

(4)     Entering an Order that, until Plaintiff has recovered full payment of monies owed to it by Defendants, in the event that any new financial accounts controlled or operated by Defendants are identified, Plaintiff shall have the ongoing authority to direct any banks, savings and loan associations, other financial institutions, payment processors, and on-line marketplaces, with whom such newly identified accounts are maintained, to carry out the following activity:

      (a)     Locate all accounts connected to Defendants;

      (b)     Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

(c) Transfer any funds restrained in such accounts to Plaintiff within ten (10) business days of receipt of this Order.

(5) Awarding Plaintiff such damages as it may prove at trial that are adequate to compensate Plaintiff for Defendants' infringement of Plaintiff's Asserted Patent, including but not limited to: lost profits and/or a reasonable royalty, and awarding Plaintiff all of the profits realized by Defendants, or others acting in concert or participation with Defendants, from Defendants' unauthorized use and infringement of the Asserted Patent, in accordance with 35 U.S.C. § 284, together with prejudgment and post-judgment interest, including treble damages due to willful infringement under 35 U.S.C. § 284. Plaintiff estimates these damages to be no less than $1,000,000, with the exact amount to be determined at trial based on sales records and financial documents to be obtained through discovery;

(6) Alternatively, should the Court not award Plaintiff statutory damages, that Defendants be ordered to pay to Plaintiff all actual damages sustained by Plaintiff as a result of Defendants' infringement, said amount to be determined at trial; and that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' infringement of Plaintiff's Asserted Patent as complained of herein, to the extent not already accounted for in the above-referenced assessment of actual damages;

(7) Awarding Plaintiff its reasonable attorneys' fees and costs pursuant to 35 U.S.C. § 285, as this is an exceptional case due to Defendants' willful and deliberate infringement; and

(8) Awarding Plaintiff any and all other relief that this Court deems just and proper.

Date: August 8, 2025

Respectfully submitted,

By: /s/ Abby Neu
Abby Neu IL #6327370
Shengmao (Sam) Mu NY #5707021
Michael Mitchell IL #6324363
Keaton Smith IL #6347736
Ryan E. Carreon DE #7305
**WHITEWOOD LAW PLLC**
57 West 57th Street, 3rd and 4th Floors
New York, NY 10019
Telephone: (917) 858-8018
Email: aneu@whitewoodlaw.com

*Counsel for Plaintiff*